NATIONAL LIFE & ACCIDENT INSURANCE COMPANY *v.*
ROGERS.

4-6014 142 S. W. 2d 219

Opinion delivered July 1, 1940.

*Barber & Henry,* for appellant.

*W. P. Strait,* for appellee.

HOLT, J. Five policies of insurance, aggregating
$1,610, were issued upon the life of Estella Rogers,
Negress, who died December 12, 1938, from acute indi-
gestion. There is an allegation in the complaint (un-
supported by substantial evidence) that Estella had
tuberculosis. This appeal is from a judgment against

appellant rendered in consequence of an instructed verdict.

Assigned errors are (1) that certain excluded evidence should have been submitted to the jury and that the jury should not have been instructed in respect of other challenged evidence; (2) that it was error, at the conclusion of all the evidence, to exclude testimony of appellant as to insurance policies issued by other companies; (3) that it was error to withdraw from the jury testimony relating to charges of fraud alleged to have been practiced by appellee and Fred Thrower in procuring the policy; and (4) that the court erred in directing a verdict for the plaintiff.

Insurance on the life of Estella Rogers was evidenced by the following policies, the dates denoting applications: August 20, 1937, National Life & Accident Ins. Co., $400; August 24, 1937, Interstate Life Ins. Co., $410; August 26, 1937, Union Life Ins. Co., $300; September 20, 1937, Reliable Life Ins. Co., $250; January 25, 1938, Dixie Life & Accident Ins. Co., $250. Aggregate weekly premiums were $1.60, of which 24 cents was paid to appellant.

It will be noted that the first application for insurance was to National Life & Accident Insurance Company; that another application was dated four days later, followed two days later by a third application; that in less than thirty days another application was made, and that the fifth is dated in January, 1938.

Sequence of issuance, the amounts involved, the total weekly premium payments, and the relatively small income of the insured, together with testimony that insured declined to accept at least one of the policies; that Ed Rogers (the insured's father) paid the premiums for several months; that thereafter Thrower discharged such obligations, and following Estella's death Rogers executed a power of attorney and apparently conveyed to Thrower all interest in the insurance—these facts and inferences to be drawn from circumstances are urged by appellant as evidence in support of the allegation

that Estella's father and Thrower entered into a conspiracy to procure the insurance, and that the insurance was, in truth, for the benefit of Thrower who had no insurable interest in the subject of the policies.

J. H. Humphreys, in submitting Estella's application, subscribed to the following: "I certify that I have asked the applicant each and every question above, and the answers are true as given me by the applicant, who has signed this application in my presence. I recommend the person proposed to be insured for insurance."

The four companies (other than appellant) that insured Estella's life paid the policies, some at a discount.

Garland Davis testified that Estella worked for his family about two and a half years; that she seemed to be in perfect health, and that her last services were in December, 1937. At that time she seemed to be sick, but September 6, 1937, when the National Life Company's policy was delivered, there was no indication of illness. Mrs. Davis testified to the same effect. Part of the time Estella was paid $1.50 per week. This was increased to $2, with occasional extra pay.

The power of attorney executed by Rogers to Thrower is dated December 27, 1938. Thrower is a Negro undertaker. Rogers claims to have acquired an interest in Thrower's business, but his testimony on this point is unsatisfactory.

There is evidence that Rogers paid premiums on some of the policies, but during the six months' period prior to Estella's death payments were made by Thrower.

J. C. Hulsey of the Reliance Life Insurance Company testified that B. A. Park, agent, took an application for Estella. Witness undertook to deliver the policy, but Estella told him she didn't want it. He left the policy at Betty Griffin's home. This testimony was objected to. At a hearing in chambers, appellant's attorney urged admissibility of the evidence, saying: "Estella Rogers didn't even know that the life insurance was on her. It is all part of a scheme to defraud." Hulsey then

testified for the record: "She said she didn't want the policy at all. I said 'Who took the policy out'? She replied, 'Father took the policy out.' Naturally I left the policy up there. I hunted her father up and he paid me." The court refused to let this evidence be presented, and instructed the jury to disregard that part of Hulsey's testimony relating to attempted delivery of the policy.

We do not think the court erred to the prejudice of appellant in excluding that part of Hulsey's testimony to which exceptions were taken. In the absence of substantial evidence tending to establish conspiracy, fraud is never presumed. *Hildebrand* v. *Graves,* 169 Ark. 210, 275 S. W. 524; *Hartsfield* v. *Crumpler,* 174 Ark. 1179, 297 S. W. 1012, and numerous other cases of similar import.

Appellant insists a question of fact was raised when the application for insurance bearing Estella's purported signature (alleged to have been written by her father) was introduced, and when handwriting specimens supplied by Ed Rogers were presented to the jury, showing, as appellant insists, marked similarity.

Although Rogers testified at length, and was subjected to vigorous cross-examination, he was not asked whether he, or Estella, signed the application.

There is no evidence to show that Estella did not authorize her father to execute the application for her; nor is there any evidence that she did not receive the policy issued by appellant—an act which would have constituted ratification.

Four companies paid the obligation without suit. Testimony of representatives of these companies is not sufficiently substantial to form the basis of a charge of conspiracy.

The application, *prima facie,* was signed by Estella. Humphreys, the soliciting agent, so certified—and the only contention tending to contradict Humphreys' certificate is the so-called dissimilarity of handwriting. No

witness testified that the signature was not Estella's, and we are not willing to say that the physical record was a circumstance that should have gone to the jury, in the absence of any direct testimony and in the absence of proof that the signature was not authorized, and that the policy was not received by Estella.

The judgment is affirmed.